O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KENT HACKER,                          )   NO. EDCV 08-1559-MAN
                                      )
              Plaintiff,              )
                                      )   MEMORANDUM OPINION
        v.                            )
                                      )   AND ORDER
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security,      )
                                      )
              Defendant.              )
_____)

        Plaintiff filed a Complaint on November 13, 2008, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's application for supplemental security income ("SSI").   On
January 22, 2009, the parties consented to proceed before the
undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).   The
parties filed a Joint Stipulation on July 14, 2009, in which:  plaintiff
seeks an order reversing the Commissioner's decision and awarding
benefits or, alternatively, remanding the case to the Commissioner for
a new administrative hearing; and defendant asks that the Commissioner's
decision be affirmed.   The Court has taken the parties' Joint
Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed his application for SSI on January 23, 2006, alleging an inability to work since January 22, 2003, due to hypertensive vascular disease and anxiety disorders. (Administrative Record ("A.R.") 42.) He has no past relevant work experience.[1] (A.R. 12.)

The Commissioner denied plaintiff's claim for benefits initially and upon reconsideration. (A.R. 46-50, 54-59.) On January 3, 2008, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Jay E. Levine ("ALJ"). (A.R. 14-41.) On February 28, 2008, the ALJ denied plaintiff's claims (A.R. 7-13), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3).

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff, who was 43 years old at the time of the hearing, has not engaged in substantial gainful activity since his alleged disability onset date. (A.R. 10.)

The ALJ determined that plaintiff has a "severe" combination of impairments, consisting of generalized anxiety disorder, obesity, gastroesophageal reflux disease, and hypertension with a history of

---

[1] Plaintiff is considered to have no past relevant work experience because he has not engaged in substantial gainful activity since 1989 (A.R. 21), which is more than 15 years before the date of the ALJ's decision. *See* 20 C.F.R. § 416.965.

1  chest pain, palpitations, and occasional dizziness. (A.R. 10.)  The ALJ
2  found that plaintiff does not have an impairment or combination of
3  impairments that meets or medically equals one of the listed impairments
4  in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)

6      The ALJ further found that plaintiff has the residual functional
7  capacity ("RFC") to perform all light work, except he must have "no
8  significant exposure to hazards such as unprotected heights or dangerous
9  machinery, and no production quota work."  (A.R. 11.)  The ALJ found
10  that plaintiff has no past relevant work but that, considering
11  plaintiff's age, education, work experience and RFC, there are jobs that
12  exist in significant numbers in the national economy that plaintiff can
13  perform.  (*Id.*)

15      Accordingly, the ALJ concluded that plaintiff has not been under a
16  disability within the meaning of the Social Security Act at any time
17  through the date of the ALJ's decision.  (A.R. 13.)

19                          **STANDARD OF REVIEW**

21      Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's
22  decision to determine whether it is free from legal error and supported
23  by substantial evidence in the record as a whole.  <u>Orn v. Astrue</u>, 495
24  F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant
25  evidence as a reasonable mind might accept as adequate to support a
26  conclusion.'"  *Id.* (citation omitted).  The "evidence must be more than
27  a mere scintilla but not necessarily a preponderance."  <u>Connett v.</u>
28  <u>Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003).  While inferences from the

record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice.  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges four issues: (1) whether the ALJ considered plaintiff's treating psychiatrist's opinion properly; (2) whether the ALJ considered the state agency findings properly; (3) whether the ALJ made proper credibility findings; and (4) whether the ALJ posed a complete hypothetical to the vocational expert. (Joint Stipulation ("Joint Stip.") at 2.) These issues are addressed below, though not in the precise order presented.

**I.   The ALJ Failed To Make Proper Credibility Findings.**

The law is well-settled that, once a disability claimant produces evidence of an underlying physical impairment that is reasonably likely to be the source of his subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 2001)(en banc); see also 20 C.F.R. § 416.929(a) (explaining how pain and other symptoms are evaluated). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting the claimant's subjective symptom testimony must be "clear and convincing." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Further, the ALJ's credibility findings must be "sufficiently specific" to allow a reviewing court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. Moisa, 367 F.3d at 885.

Both in his filings with the Commissioner and in his testimony,

5

plaintiff described various subjective symptoms from which he claims to suffer.  Plaintiff complained of chest pain, palpitations, fatigue, and dizziness. (A.R. 31, 32, 34.)  He also complained of back pain. (A.R. 26.)

In his decision, the ALJ found that plaintiff suffered from "medically determinable impairments that could reasonably be expected to produce the alleged symptoms." (A.R. 9.)  However, the ALJ found that "[plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." (*Id.*)  The reasons the ALJ cites in reaching this credibility determination, to the extent they are discernible, do not withstand scrutiny.

First, the ALJ noted that plaintiff's daily activity report indicated that plaintiff was:

> easily fatigued and experienced heart palpitations with any significant physical activity, that he lived with his family, that he spent most of his time in bed and only occasionally walked short distances to get his mail or go grocery shopping with his teenage children, and that he slept eight to twelve hours per day and napped one to three hours per day.

(A.R. 9.)

The ALJ erred in failing to specifically indicate how these reported daily activities led him to the conclusion that plaintiff's subjective symptom testimony lacked credibility. *See* <u>Gonzalez v.</u>

1   Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding error where ALJ
2   failed to expressly link plaintiff's daily activities to the conclusion
3   that he lacked credibility).   It is not clear how plaintiff's reported
4   daily activities would negatively affect his credibility.   None of the
5   activities the ALJ enumerated are inconsistent with plaintiff's claimed
6   limitations.   In fact, plaintiff's claim that he spends most of his time
7   in bed and experiences palpitations with any significant physical
8   activity supports his subjective pain testimony.   In any case, the ALJ
9   did not clearly identify what significance, if any, plaintiff's daily
10  activities had on his ultimate credibility determination.

11

12      The ALJ further found that: "In terms of [plaintiff's] alleged
13  chest pain, palpitations, fatigue and dizziness, the medical evidence of
14  record has established no significant heart disease . . . other than
15  hypertension which has been controlled with medication and has resulted
16  in no end organ disease." (A.R. 9.)   It is unclear whether and to what
17  extent the ALJ discredited these subjective complaints.   However, it
18  appears that the ALJ has disregarded them at least to the extent that
19  they are not substantiated by objective medical findings.   This is an
20  impermissible reason to discredit the testimony.   If the ALJ finds, as
21  he did here, that plaintiff has an underlying impairment that can
22  reasonably be expected to produce the alleged symptoms, he may not
23  discredit subjective symptom testimony for the sole reason that the
24  degree of the limitation is not fully supported by the objective medical
25  evidence.   See Fair v. Bowen, 885 F.2d 597, 601-02 (9th Cir. 1989);
26  Stewart v. Sullivan, 881 F.2d 740, 743-44 (9th Cir. 1989).

27

28      Finally, the ALJ found that plaintiff "exaggerated the intensity

7

and frequency of his physical and emotional symptoms" when he testified that he was "dizzy all the time" and had "excruciating back pain." (A.R. 9.)  The ALJ discredited plaintiff's testimony as "not consistent with the record since treating sources have indicated no such marked symptomology, have not found any pathology to support such complaints, nor have they adjusted his medication to control the alleged symptoms." (*Id.*)  This reasoning, however, is based largely on an inaccurate characterization of the record.

The ALJ's finding that the treatment records indicate no such "marked symptomology" is vague at best.  If he meant that there are no such *subjective* symptoms noted in the record supporting plaintiff's testimony of constant dizziness and back pain, the record clearly contradicts this assertion.  Plaintiff's treatment record indicates that plaintiff complained numerous times of both dizziness and back pain. (A.R. 234, 236, 346, 347.)  The fact that the treatment record does not indicate that plaintiff complained of the same degree of pain or consistency of dizziness that he alleges in his testimony is an inadequate reason to discredit the subjective symptom testimony.  *See* Fair, 885 F.2d at 601-02.  On the other hand, if the ALJ meant that *objective* symptoms of this nature are not indicated by the record, he did not make this assertion clear.  The ALJ must cite sufficiently clear reasons to allow the reviewing court to properly evaluate the evidence considered in reaching his determination.  Moisa, 367 F.3d at 885.  The ALJ's finding that the record did not indicate any such "marked sympotomology" is too vague to allow for review and requires remand for clarification.

8

1    Furthermore, the ALJ's assertion that plaintiff's medication has
2  not been adjusted to control the alleged symptoms is contradicted by the
3  record.  (A.R. 9.)  The record indicates that as of February 3, 2006,
4  plaintiff had not been prescribed any pain medication for his back.
5  (A.R. 97.)  Yet as of May 24, 2007, the record indicates that
6  plaintiff's doctors at LaSalle Medical Group prescribed Vicodin for his
7  back pain.  (A.R. 352.)  Therefore, the ALJ's statement that his
8  medication has not been adjusted is contradicted by the record.

9

10    The ALJ did not provide clear and convincing reasons to discredit
11  plaintiff's subjective symptom testimony.  Accordingly, the ALJ's
12  rejection of plaintiff's credibility, without setting forth clear and
13  convincing reasons for the rejection, constitutes reversible error. On
14  remand, the ALJ must provide reasons, if they exist and are in
15  accordance with the requisite legal standards, for discrediting
16  plaintiff's pain testimony.

17

18  **II.   The ALJ Failed To Fully Credit The State Agency's Findings In**
19       **Assessing Plaintiff's RFC.**

20

21    Plaintiff further alleges that the ALJ improperly considered the
22  State agency findings.  (Joint Stip. at 2.)  For the reasons set forth
23  below, the  Court agrees.

24

25    The only discussion of plaintiff's mental limitations appears in
26  step three of the analysis in the ALJ's evaluation of whether
27  plaintiff's impairment satisfies the criteria for Listing 12.06. (A.R.
28  10.)  The ALJ found that the State agency's findings were "reasonable

and well supported" and, accordingly, credited the assessment.  (A.R. 11.)  While the ALJ correctly found, in line with the State agency's findings, that plaintiff did not meet the listing criteria,[2] he found that plaintiff had mild difficulties with regard to activities of daily living and social functioning, and moderate difficulties with regard to concentration, persistence, or pace.  (*Id.*)

The ALJ then continued to the RFC assessment.  He stated that his findings regarding plaintiff's mental limitations were "translated" into work-related functions in the RFC assessment.  (A.R. 11.) He ultimately found that plaintiff maintained the RFC "to perform light work . . . [with] no significant exposure to hazards such as unprotected heights, or dangerous machinery, and no production quota work."  (*Id.*)

The plaintiff argues that, in reaching his RFC assessment, the ALJ ignored some of the State agency's findings regarding plaintiff's moderate mental limitations.  (Joint Stip. at 10.)  Specifically, plaintiff asserts that the ALJ ignored plaintiff's moderate limitations in his ability to:  carry out detailed instructions; maintain attention and concentration for extended periods of time; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; sustain ordinary routine without special supervision; work in coordination with or proximity to others without being distracted; and interact appropriately with the general public.

---

[2]   Listing 12.06 requires, *inter alia*, a documented anxiety related disorder that results in at least two of the following: *marked* limitation in activities of daily living, maintaining social function, or maintaining concentration, persistence, and pace. 20 C.F.R. Pt. 404, Subpt. P, Appx. I.  The State agency found only mild or moderate limitations.  (A.R. 309-11.)

10

1  (Joint Stip. at 9-10.)

2

3       When assessing a plaintiff's RFC, the ALJ is required to analyze

4  how plaintiff's limitations affect his work-related ability on a

5  function-by-function basis before making a determination.   Social

6  Security Ruling ("SSR") 96-8p.   Critically, when assessing plaintiff's

7  non-exertional, mental limitations, the ALJ is required to do "a more

8  detailed assessment by itemizing various functions contained in the

9  broad categories found in paragraphs B and C of the adult mental

10 disorders listings in 12.00 of the Listing of Impairments."   *Id.*

11

12      In his decision, however, the ALJ merely "translated" the findings

13 regarding plaintiff's mental limitations into work-related functional

14 limitations.  (A.R. 11.)  He failed to explain how plaintiff's mild to

15 moderate limitations in social interaction, daily activity, and

16 concentration, persistence, and pace led to the conclusion that

17 plaintiff cannot be exposed to certain workplace hazards and cannot

18 perform production quota work.[3]  It is far from clear that the ALJ's RFC

19 assessment addresses all of plaintiff's specific mental limitations.

20 For example, plaintiff's moderate limitations in maintaining regular

21 attendance and punctuality are not clearly accommodated by the exclusion

22 of production quota work.  Most notably, the ALJ does not address the

23 State agency's specific finding that plaintiff is moderately limited in

24 his "ability to interact appropriately with the general public."  (A.R.

25 310.)  In fact, the State agency found that plaintiff "cannot work with

26

27  [3]     In fact, the ALJ's finding that plaintiff should not be exposed to
    unprotected heights or dangerous machinery seems to be a limitation that
    follows logically from plaintiff's bouts of dizziness, rather than any
28  mental limitation.

                                      11

1  [the] public." (A.R. 311.) This limitation does not seem to be
2  addressed at all by the ALJ's conclusory assessment.

3

4      The Commissioner asserts that, to the extent the ALJ's RFC
5  assessment fails to acknowledge the State agency's finding that
6  plaintiff *cannot* work with the public, it is instead supported by the
7  consultative examiner's findings that plaintiff is only *slightly limited*
8  in interacting with the public. (Joint Stip. at 12; A.R. 299.) It is
9  true that the ALJ may resolve conflicts in medical evidence or opinion.
10 Andrews, 53 F.3d at 1039. However, in this case, the ALJ did not
11 suggest that the two medical opinions were in conflict or credit one
12 opinion over the other.[4] The Commissioner's argument is an impermissible
13 post-hoc rationalization that attempts to support the ALJ's conclusion
14 on grounds that the ALJ did not rely upon. *See* Pinto v. Massanari, 249
15 F.3d 840, 847-48 (9th Cir. 2001).

16

17     On remand, the ALJ should reassess plaintiff's RFC. In doing so,
18 he should consider all of plaintiff's specific limitations and explain
19 how each limitation affects his ability to perform work-related
20 functions.
21 ///
22 ///
23 ///
24 ///

25 _____

26 [4]   In fact, the ALJ's assessment nearly mirrors the State agency's
   assessment. The ALJ, like the State agency, found moderate limitations
27 in concentration, persistence, and pace (A.R. 11, 310), whereas the
   consultative examiner found only slight limitation in that category
28 (A.R. 299.)

**III.** **Until The ALJ Has Properly Assessed Plaintiff's RFC, The Court Cannot Assess The Adequacy Of The Hypothetical Posed To The Vocational Expert.**

The first hypothetical precisely mirrored the ALJ's ultimate RFC finding.  He instructed the VE as follows:

> Assume a hypothetical individual Claimant's age, education, and work experience. Assume this person is restricted to a light range of work, no work on unprotected heights, no work on dangerous machinery, no conveyor belt, assembly line, or piece work, all of which constitutes production quotas.

(A.R. 38.)

The hypothetical questions posed to vocational experts must set out *all* plaintiff's limitations. <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162-63 (9th Cir. 1999).  The hypothetical, just as the ALJ's RFC assessment, however, fails to take into consideration the State agency's finding that plaintiff is moderately limited in interacting with the general public and  "cannot work with [the] public."  (A.R. 310, 311.)

The vocational expert testified that, in view of these limitations, plaintiff could perform light, unskilled work including cashier II, cleaner/housekeeper, and informational clerk.  (A.R. 38-39.)  These jobs, with perhaps the exception of cleaner, require the ability to work

13

with the public.[5]   While the Commissioner, in his part of the Joint Stipulation, argues that even if plaintiff were limited to no public contact, there still exist jobs in significant numbers that plaintiff could perform.   (Joint Stip. at 13.)   The Commissioner's argument, however, is, again, a post-hoc rationalization and may not be used to supplement the ALJ's decision.   Pinto, 249 F.3d at 847-48 (an agency decision cannot be affirmed based on a ground that the agency did not invoke in making its decision).   The ALJ did not rely on the existence of jobs in the national economy that do not require public interaction when making his disability determination.   He specifically stated that plaintiff would be able to perform the jobs listed by the vocational expert: cashier II, housekeeping cleaner, and information clerk.   (A.R. 12.)

On remand, the ALJ should pose new hypotheticals to the vocational expert that take into consideration all of plaintiff's specific limitations.

**IV.   The ALJ Properly Considered The Treating Physicians' Opinions.**

Plaintiff contends that the ALJ improperly rejected three treating physicians' opinions without providing legally sufficient reasons. (Joint Stip. at 3.)   For the reasons set forth below, the Court

---

[5]   The Dictionary of Occupational Titles provides that the job duties of "cashier II" include "[r]eceiv[ing] cash from customers and employees."   DOT 211.462-010.   An "information clerk" is required to provide "travel information for bus or train patrons" and answer "inquiries regarding departures, arrivals, stops, and destinations of scheduled buses or trains."   DOT 237.367-018. These jobs require rather extensive interaction with the public.

14

1  disagrees.

2

3      Generally, a treating physician's opinion is given greater weight,

4  because "he is employed to cure and has a greater opportunity to know

5  and observe the patient as an individual." <u>Magallanes v. Brown</u>, 881

6  F.2d 747, 751 (9th Cir. 1989)(citation omitted).  However, the ALJ need

7  not accept the opinion of a treating physician "if that opinion is

8  brief, conclusory, and inadequately supported by clinical findings."

9  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002).

10

11      In this case, plaintiff cites three medical records he contends

12 constitute treating physician opinions.  The first record referenced is

13 a one-page "Authorization to Release Medical Information" completed by

14 Dr. Albano, which indicates that plaintiff is unable to work.  (A.R.

15 343.)  The ALJ characterized this form as "incomplete as submitted and

16 the noted check-box findings are very inconsistent with the lack of

17 significant supporting clinical findings" and, therefore, did not credit

18 its findings.  (A.R. 9.)  The ALJ's rejection of this evidence, was

19 permissible because it was a check-off report that did not contain any

20 explanation of the bases of its conclusions.  <u>Crane v. Shalala</u>, 76 F.3d

21 251, 253 (9th Cir. 1996).

22

23      The ALJ did not discuss the other two "treating source opinions"

24 plaintiff references.  (Joint Stip. 3.)  However, to the extent the ALJ

25 erred in failing to address these "opinions," any error was harmless.

26 Harmless error exists when it is "clear from the record that an ALJ's

27 error was 'inconsequential to the ultimate nondisability

28 determination.'"  <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th

Cir. 2006) (citation omitted).  The report from Dr. Ramos, just as Dr. Albano's report, is conclusory and unsupported by any clinical findings. (A.R. 344.)  Accordingly, even had the ALJ addressed this medical record, he need not have credited the opinion.  *See* <u>Thomas</u>, 278 F.3d at 957.  Therefore, his failure to address the report constitutes harmless error.

Finally, Dr. Zaman's statement that "[plaintiff] continues to have disabling chest discomfort," is not a medical opinion.  (A.R. 327.) Medical opinions are statements from physicians that reflect "judgments about the nature and severity of [a plaintiff's] impairment(s)."  20 C.F.R. § 416.927(a)(2).  This statement does not reflect Dr. Zaman's judgment as a physician.  In this context, Dr. Zaman's statement can be more appropriately characterized as a description of plaintiff's subjective complaints rather than a true medical opinion.  Therefore the report was not owed any weight.  *See* <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1147 (9th Cir. 2001) (finding that the ALJ may disregard any medical opinion premised on subjective complaints).  Dr. Zaman continues by stating that he is "not quite sure what the etiology [of plaintiff's disabling chest pain] would be," suggesting that there are no objective findings to support the subjective complaint.  (A.R. 327.)  The ALJ's failure to address this medical report was inconsequential to the ultimate disability determination and, therefore, constitutes harmless error.

Contrary to plaintiff's assertion, the ALJ did not err in failing to consider these records from plaintiff's treating sources due to their brief and conclusory character.  They do not constitute proper medical

16

1  opinions.   There was no error.

2  **V.    <u>Remand Is Required</u>.**

3

4       The decision whether to remand for further proceedings or order an

5  immediate award of benefits is within the district court's discretion.

6  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000).   Where no

7  useful purpose would be served by further administrative proceedings, or

8  where the record has been fully developed, it is appropriate to exercise

9  this discretion to direct an immediate award of benefits.   *Id*. at 1179

10 ("the decision of whether to remand for further proceedings turns upon

11 the likely utility of such proceedings").   However, where there are

12 outstanding issues that must be resolved before a determination of

13 disability can be made, and it is not clear from the record that the ALJ

14 would be required to find the claimant disabled if all the evidence were

15 properly evaluated, remand is appropriate.   *Id.*

16

17      Here, remand is the appropriate remedy to allow the ALJ the

18 opportunity to remedy the above-mentioned deficiencies and errors.   *See,*

19 *e.g.,* <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(remand for

20 further proceedings is appropriate if enhancement of the record would be

21 useful);   <u>McAllister</u>, 888 F.2d 599, 603 (9th Cir. 1989)(remand

22 appropriate to remedy defects in the record).

23

24                                **CONCLUSION**

25

26      For the reasons stated above, IT IS ORDERED that the decision of

27 the Commissioner is REVERSED, and this case is REMANDED for further

28 proceedings consistent with this Memorandum Opinion and Order.

1    IT IS FURTHER ORDERED that the Clerk of the Court shall serve

2  copies of this Memorandum Opinion and Order and the Judgment on counsel

3  for plaintiff and for defendant.

4

5    **LET JUDGMENT BE ENTERED ACCORDINGLY.**

6

7  DATED: March 31, 2010

8                                            MARGARET A. NAGLE
                                      UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18